UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

LINDA ANN BRUZDOSKI,

                    Plaintiff,        **MEMORANDUM DECISION AND ORDER**

   -against-        21-CV-06271 (JMW)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
----------------------------------------------------------------X

Daniel Adam Osborn, Esq.
**Osborn Law P.C.**
43 West 43rd Street, Ste 131
New York, NY 10036
*Attorney for Plaintiff Linda Ann Bruzdoski*

Nicol S. Fitzhugh, Esq.
Jeremiah Hayes, Esq.
Anne M. Zeigler, Esq.
Special Assistant U.S. Attorney
**United States Attorney's Office**
c/o Social Security Administration
Office of the General Counsel
601 E.12 th St., Room 965
Kansas City, MO 64106
*Attorney for Defendant Commissioner of Social Security*

**WICKS,** Magistrate Judge:

      Plaintiff Linda Ann Bruzdoski ("Plaintiff") seeks review and reversal of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant"), reached after a hearing before an administrative law judge, denying her application for Social Security Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings pursuant

to Federal Rule of Civil Procedure 12(c). (DE 14, 15.) For the following reasons, Plaintiff's motion is GRANTED, the Commissioner's cross-motion is DENIED, and the case is REMANDED for further proceedings, before a new Administrative Law Judge ("ALJ"), consistent with this Order.

### I.     BACKGROUND

Plaintiff filed her application for SSI benefits on August 25, 2014, alleging a disability onset date of January 14, 2014. (DE 13 at 388, 412.) Plaintiff alleges she became disabled due to back problems post laminectomy[1] at L5-S1. (DE 13 at 412.)

Plaintiff's application was initially denied on November 20, 2014. (DE 13 at 186.) At Plaintiff's request, on December 20, 2016, an administrative hearing was held before Administrative Law Judge Patrick Kilgannon (the "ALJ") with supplemental hearings held on February 1, 2018, and July 12, 2018. (DE 13 at 16.) Appearing and testifying at these hearings were Plaintiff, medical experts Jennifer Blitz, Psy.D and Louis Fuchs, M.D., and vocational expert Dale Pasculli. (*Id.*) Plaintiff was represented by counsel. (*Id.*)

### A.     The First ALJ Decision

In a decision dated April 22, 2021, the ALJ denied Plaintiff's claim. (DE at 16–28 ("First ALJ Decision").) The ALJ followed a five-step analysis pursuant to 20 C.F.R. § 404.1520. (*Id.*) First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (DE 13 at 18.) Second, the ALJ found that Plaintiff had demonstrated the following severe impairments: lumbar degenerative disc disease status-post

---

[1] A laminectomy is a surgery where bone spurs and tissues associated with arthritis of the spine are removed to create space and relieve pressure on the spinal cord or nerves. *See* Mayo Clinic, *Laminectomy*, https://www.mayoclinic.org/tests-procedures/laminectomy/about/pac-20394533.

2

surgical repair,[2] cervical degenerative disc disease,[3] fibromyalgia,[4] and degenerative arthritis of the bilateral first metatarsophalangeal joint of the feet.  (*Id.*)  Third, the ALJ found that none of those impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (DE 13 at 20.)  Fourth, the ALJ found that Plaintiff had the residual functioning capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a).  (DE 13 at 21.)  At step five, the ALJ determined that Plaintiff could perform past relevant work as a secretary, "a skilled position requiring a sedentary exertional capacity."  (DE 13 at 27.)  Accordingly, the ALJ concluded that Plaintiff was "not disabled," as defined by the Act from the onset date through the date of the First ALJ Decision.  (DE 13 at 28.)

The First ALJ Decision became final on May 7, 2019, when the Appeals Council denied Plaintiff's request for review.  (DE 13 at 1.)  On July 8, 2019, Plaintiff commenced an action in the Eastern District of New York pursuant to 42 U.S.C. § 405(g) of the Act for review of the First ALJ Decision ("First Civil Action").[5]  (*See* DE 13 1870-77.)  Approximately one year later, the parties entered pursuant to the fourth sentence of 42 U.S.C § 405(g) a Stipulation and Order of Remand ("Stipulation"), reversing the First ALJ Decision and remanding the action for further administrative proceedings.  (DE 13 at 1872-73.)  On July 6, 2020, the Honorable Joanna

---

[2]   Degenerative disc disease occurs when the fluid-filled discs between vertebrae begin to dry out and shrink.  *See* John Hopkins Medicine, *Degenerative Disc Disease*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/degenerative-disc-disease. Degenerative disc disease, a form of arthritis, can occur in the three regions of the spine: the cervical spine, the thoracic spine, and the lumbar spine. *Id.*

[3]   *Id.*

[4]   Fibromyalgia is a "disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues." Mayo Clinic, *Fibromyalgia*, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780.  It is believed that fibromyalgia enhances painful sensations by affecting the way the brain and spinal cord process painful signals. *Id.*

[5]   *See Bruzdoski v Commissioner of Social Security*, No. 19-CV-03908 (JS) (E.D.N.Y 2019).

Seybert so-ordered the Stipulation and a Judgment reflecting the same was entered the following day. (DE 13 at 1874-77.)

Upon remand, the Appeals Council instructed the ALJ to further consider the nature and severity of the Plaintiff's colitis, migraine headaches, and fibromyalgia. (DE 13 at 1739, 1882-83.) The ALJ was further directed to consider the Plaintiff's past relevant work with the assistance of a vocational expert, if warranted. (*Id.*)

**B.     The Second ALJ Decision**

A new administrative hearing was conducted before the ALJ on December 17, 2020, with a supplemental hearing on April 1, 2021.[6] (DE 13 at 1739.) Appearing and testifying at the hearings were Steve Golub, M.D., an impartial medical expert, and Rocco J. Meola, an impartial vocational expert. (*Id.*) Plaintiff, still represented by counsel, also testified. (*Id.*)

In a decision dated April 22, 2021, the ALJ found Plaintiff was not disabled prior to July 1, 2018, but became disabled on that date. (DE 13 at 1759 ("Second ALJ Decision").) In making that determination, the ALJ again followed the five-step analysis pursuant to 20 C.F.R. §§ 404.1520 and found that Plaintiff had five severe impairments: lumbar spine disorder; cervical spine disorder, ulcerative colitis,[7] bilateral hallux limitus,[8] and obesity. (DE 13 at 1742.) The ALJ determined that Plaintiff's medical impairments "significantly limit" her ability to perform basic work activities under Social Security Rulings ("SSRs") 85-28. (*Id.*)

---

[6] Due to the COVID-19 pandemic, both hearings were conducted by telephone. (DE 13 at 1739.)

[7] Ulcerative colitis is an inflammatory bowel disease that causes inflammation and ulcers in the disgestricve tract.   Mayo Clinic, *Ulcerative Colitis*, https://www.mayoclinic.org/diseases-conditions/ulcerative-colitis/symptoms-causes/syc-20353326.

[8] Hallux limitus, sometimes referred to as hallux rigidus (*see* Academy Foot & Ankle Specialists, *Hallux Limitus/Hallux Rigidus*, https://www.texasfootdoctor.org/hallux-limitus-hallux-rigidus) is a type of arthritis in the big toe which affects the joint where the base of the big toe meets the foot. Cleveland Clinic, *Hallux Rigidus*, https://my.clevelandclinic.org/health/diseases/14665-hallux-rigidus.

4

However, the ALJ found that none of those impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (DE 13 at 1745.) The ALJ found that prior to July 1, 2018, Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) except:

> she can lift or carry up to 10 pounds frequently and 20 pounds occasionally, sit, stand, or walk up to 6 hours in an 8 hour day with normal breaks, push or pull bilaterally on an occasional basis, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, or crawl. She should avoid unprotected heights, extreme cold, and exposure to coarse vibrations with the bilateral lower extremities, and would be off task up to ten percent of the workday and would be absent up to one day per month.

(DE 13 at 1747.) The ALJ found that as of July 1, 2018, Plaintiff has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) except:

> she can lift or carry up to 5 pounds occasionally and never to rarely up to 10 pounds. She can sit, stand, or walk up to 1 hour in an 8-hour day. She would also miss more than 1 day of work per month and be off task 20 percent of the workday (or 12 minutes every hour, in an 8-hour day).

(DE 13 at 1756.) As a result, the ALJ found that prior to July 1, 2018, Plaintiff could perform her past relevant work as a secretary but beginning on July 1, 2018, Plaintiff's RFC prevented her from being able to perform her functions as a secretary. (DE 13 at 1758-59.) Accordingly, the ALJ concluded that Plaintiff was "not disabled," as defined by the Act, from the onset date to July 1, 2018, but did find Plaintiff disabled from July 1, 2018, through the date of the Second ALJ Decision. (DE 13 at 1759.)

The Second ALJ Decision became final on September 20, 2021, when the Appeals Council denied Plaintiff's request for review. (DE 13 at 1729-31.) On November 11, 2021, Plaintiff commenced this action for review of the Second ALJ Decision ("Second Civil Action"). (*See* DE 1.) On September 22, 2022, Plaintiff filed the instant motion for judgment on the pleadings seeking reversal of the Second ALJ Decision. (DE 14.) On

5

July 7, 2022, Plaintiff served upon Defendant the instant motion for judgment on the pleadings seeking reversal of the Second ALJ Decision. (*Id.*) On August 31, 2022, Defendant opposed Plaintiff's motion, and cross-moved for judgment on the pleadings seeking affirmance of the Second ALJ Decision. (DE 15.) On September 21, 2022, Plaintiff served a memorandum in further support of her motion and in opposition Defendant's cross-motion. (DE 16.) The parties bundle filed all motion papers on September 22, 2022. (*See* DE 14-16.)

## II.     LEGAL STANDARD

### A.     Standard of Review

When determining if the Social Security Administration's denial of disability benefits was warranted, it is not the function of the Court to review the record *de novo*—instead, it must examine whether the ALH's conclusions are "supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvior v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)). As such, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." *State of New York ex rel. Bodnar v. Sec. of Health and Human Servs.*, 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's

decision must be supported by "adequate findings . . . having rational probative force." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Furthermore, the Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). *See also Shalala v. Schaefer*, 509 U.S. 292, 296–97 & n.1 (1993). The "reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or incorrectly applied the applicable laws and regulations*.*" *Kessler v. Comm'r of Soc. Sec.*, No. 17-CV-4264, 2020 WL 1234199, at *5 (E.D.N.Y. Mar. 13, 2020) (citing *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999)).

**B.**     **Social Security Disability Standard**

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Thus, an individual must be found disabled when his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

As discussed above, the Commissioner's regulations outline a five-step inquiry that ALJs must undertake in order to ascertain a claimant's status. *See* 20 C.F.R. §§ 404.1520, 416.920. According to this framework, a claimant will be found disabled if the Commissioner determines:

> (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not

> capable of continuing in his prior type of work, the Commissioner must find his disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)).  At step four, the Commissioner evaluates the extent of a claimant's RFC before deciding if the claimant can continue in their prior field of work. .  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant bears the burden at the first four steps; however, at the fifth step, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

### III.   DISCUSSION

Plaintiff asserts that the Second ALJ Decision should be reversed insofar as Plaintiff was found not disabled prior to July 1, 2018.  (DE 14 at 6; DE 16 at 2.)  Plaintiff contends that the Second ALJ Decision suffers from three defects which warrant reversal: (1) the ALJ failed to give controlling weight to Plaintiff's treating physicians; (2) the ALJ erred in assessing the severity of Plaintiff's fibromyalgia at step-two; and (3) the ALJ's RFC assessment is not supported by substantial evidence.  (DE 14 at 6.)

Defendant counters that the ALJ properly considered the medical evidence and weighed the opinions of the various physicians appropriately.  (DE 15-1 at 33.)  Defendant asserts that "substantial evidence. . . supports the ALJ's conclusion that Plaintiff could perform a range of light work prior to July 1, 2018." (*Id.* at 30.)  As explained below, the Court agrees with Plaintiff that the ALJ did not follow the treating physician rule and that the RFC determination is not supported by substantial evidence.

#### A.   <u>The ALJ Failed to Follow the Treating Physician Rule</u>

As Plaintiff filed her SSI application before March 27, 2017, her application is subject to the "treating physician rule."  20 C.F.R. § 404.1527(c)(2); *see Colgan v. Kijakazi*, 22 F.4th 353,

8

360 n.2 (2d Cir. 2022) ("The new regulatory regime is clear that claims filed before March 27, 2017—such as [Plaintiff]'s—are still governed by the framework and evidentiary standards set out in 20 C.F.R. § 404.1527.").

The treating physician rule dictates that "the opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (alterations in original) (quoting *Burgess*, 537 F.3d at 128)). "Put another way, the rule requires the ALJ to defer to the treating physician's opinion when making disability determinations if the opinion is supported by reliable medical techniques and is not contradicted by other reasonable evidence in the administrative record." *Colgan*, 22 F.4th at 360 (citation omitted).

"[I]f the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95. This analysis mandates that the ALJ "explicitly consider" the following, nonexclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95–96 (alteration in original) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)). "At both steps, the ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.'" *Id.* at 96 (alterations in original) (quoting *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)). Though an ALJ's failure to "explicitly" apply these factors may constitute a procedural error, the reviewing court may affirm the Commissioner's decision where (1) the Commissioner gives "good reasons" for its weight assignment, or (2) when a "review of

9

the record" shows that the "substance of the treating physician rule was not traversed[.]" *Id.* "With respect to assigning weight to the opinions of non-treating physicians, an ALJ applying the earlier regulations must consider the same factors evaluated when the ALJ does not give controlling weight to a treating physician." *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 160 (S.D.N.Y. 2022).

Plaintiff argues that the ALJ failed to follow the treating physician rule because the ALJ gave "less weight" to the opinions of Plaintiff's treating doctors Joseph Duva, MD (gastroenterologist), Ramona Rajapakse, MD (gastroenterologist), and Myassar Zarif, MD (neurologist).[9] (DE 14 at 24-25.) Plaintiff contends the opinions of these treating physicians are well supported by acceptable clinical laboratory diagnostic techniques and are not inconsistent with substantial evidence in the record. (*Id.*)

Defendant argues that the ALJ properly considered the opinions of Plaintiff's treating physicians and "weighed the various opinions appropriately" in light of the record evidence. (15-1 at 33-42.)

### i. The Gastroenterologists (Dr. Duva and Dr. Rajapakse)

Plaintiff's treatment with Dr. Duva spans from 2006 through 2017. (DE 13 at 1054-96.) In a medical source statement dated July 12, 2017, Dr. Duva stated a diagnosis of ulcerative colitis, with symptoms of symptoms of tenderness, weakness, fatigue/malaise, chronic uncontrollable diarrhea, bloody diarrhea, nausea, mucous in stool, and abdominal distension. (DE 13 at 1234.) Because of Plaintiff's ulcerative colitis, Dr. Duva opined that Plaintiff

---

[9] The Court notes that controlling weight was not afforded to the opinions of any of Plaintiff's treating physicians in the Second ALJ Decision. (*See* DE 13 at 1739-60.) Specifically, the ALJ weighed the physician opinions as follows: Maura Quealy, L.C.S.W., "little weight" (DE 13 at 1744); Lois J. Avvento, M.D., "some weight" (DE 13 at 1751); Andrea Pollack, D.O., "less weight" (DE 13 at 518, 1752); Myassar Zarif, M.D., "less weight" (DE 13 at 1753); William Buffone, DPM, "less weight" (*Id.*); Joseph Duva, M.D., "less weight" (DE 13 at 1754); Brian Morelli, M.D., "less weight" (*Id.*); Peter Lascarides, D.O., "less weight" (DE 13 at 1758).

experienced daily pain and would require a job with ready access to a restroom because Plaintiff will need to take unscheduled and unpredictable restroom breaks. (*Id.*) Dr. Duva further opined that because of Plaintiff's condition, her restriction of activities of daily living and difficulties in maintaining social functioning were "marked." (*Id.*) This designation means that Plaintiff's limitations are "more than moderate, but less than extreme," and that they are to such a degree as to "seriously interfere" with Plaintiff's ability to function independently, appropriately, and effectively. (*Id.*) Dr. Duva found that due to episodic flare-ups, Plaintiff's capacity to concentrate will be periodically diminished; as such, she will be unable to perform her job function and must be absent from work. (*Id.*)

Dr. Rajapakse's opinion mirrors that of Dr. Duva. Dr. Rajapakse treated Plaintiff from 2017 through 2018. (DE 13 at 1347-58; 1559-62; 1626-32; 1638-43; 1693-99; 1703-04.) In a medical source statement dated June 27, 2018, Dr. Rajapakse also stated a diagnosis of ulcerative colitis, supported by a colonoscopy which demonstrated multiple recurrent inflammatory lesions. (DE 13 at 1711.) Dr. Rajapakse indicated that Plaintiff frequently experienced abdominal pain that was at times was severe. (*Id.*) Dr. Rajapakse opined that Plaintiff needed a job that permitted ready access to a restroom because she would need to take unscheduled restroom breaks, the frequency dependent on her symptoms and flareups, and estimated that Plaintiff would likely be absent from work three or more times a month. (*Id.*)

Here, remand is necessary because the ALJ failed to state the amount of weight afforded to Dr. Rajapakse's opinion. In the portion of the Second ALJ Decision discussing both Dr. Duva and Dr. Rajapakse's treatment of Plaintiff, the ALJ only states that he is affording Dr. Duva's opinion "less weight." (DE 13 at 1754) ("The undersigned accords less weight to the opinions of Dr. Duva, as treatment shows the claimant's long history of colitis, with the exception of recent exacerbation or flare, was generally well controlled by routine medication management and

11

care.") The ALJ fails to state how he weighed the opinion of Dr. Rajapakse. An ALJ's failure to state the amount of weight afforded to a treating physician's opinion requires remand. *See McAllister v. Colvin*, 205 F. Supp. 3d 314, 332 (E.D.N.Y. 2016) (collecting cases) ("Further, this Court has held that when the ALJ fails to state the amount of weight he gave to a treating physician's opinion remand is required"). Therefore, the ALJ's failure to do so regarding Dr. Rajapakse's opinion here, requires remand.

To the extent the ALJ intended to include Dr. Rajapakse's opinion in his analysis to afford Dr. Duva's opinion "less weight," the same does not save the Second ALJ Decision from remand.[10] The ALJ was required to defer to the treating gastroenterologists' opinions when making the disability determination, so long as the opinions were "supported by reliable medical techniques" and "not contradicted by other reasonable evidence in the administrative record." *Colgan*, 22 F.4th at 360. And yet, despite Dr. Duva and Dr. Rajapakse's assertions that Plaintiff's "marked" to "severe" impairments impact her ability to perform activities of daily life and work, the ALJ assigned their opinions "less weight." (DE 13 at 1753.) The ALJ dismissed Dr. Duva and Dr Rajapakse's opinions asserting that "treatment shows [Plaintiff's] long history of colitis, with the exception of recent exacerbation or flare, was generally well controlled by routine medication management and care"." (DE 13 at 1754.) However, Plaintiff's medical records, including those cited to by the ALJ, do not necessarily suggest that Plaintiff's ulcerative colitis was "well controlled." (*Id.*) Rather, Plaintiff repeatedly sought treatment for abdominal pain (DE 13 at 1056, 1063, 1065, 1697, 1703, 1712-13), blood and mucous in her stool (DE 13 at

---

[10] The Second ALJ Decision addresses the opinions of Dr. Duva and Dr. Rajapakse in a single paragraph. (*See* De 13 at 1753-54.) Taking the section as a whole, it is possible ALJ meant to discuss the weight of the two treating physicians together and that the omission of Dr. Rajapaske's name was merely typographical error (i.e. "The undersigned accords less weight to the opinions of Dr. Duva [*and Dr. Rajapakse*], as treatment shows the claimant's long history of colitis. . ."). (*Id.*)

12

1059, 1062), ulcerative colitis flare ups (DE 13 at 1062), changes in bowel habits (DE 13 at 1081, 1084), urgency and fecal incontinence (DE 13 at 1563; 1706.) Despite medication, Plaintiff saw "little change in her symptoms." (DE 13 at 1563). Plaintiff was originally prescribed Prednisone to help with inflammation, but once that drug became ineffective, Plaintiff began receiving Remicade infusions which Plaintiff testified take approximately three hours to administer and result in Plaintiff feeling fatigued for a day or two after. (DE 13 at 1566; 1578; 1586; 1600; 1609; 1645; 1821-22; 2577; 2580.) Plaintiff underwent several laboratory and diagnostic tests such as colonoscopies and endoscopies that Dr. Duva and Dr. Rajapaske reviewed in coming to their opinions. (DE 13 at 1077-86; 1563; 1684-87; 1693-94; 1695-99, 1712.)

      The ALJ failed to explicitly consider the *Burgess* factors or provide "good reasons" for assigning Dr. Duva's opinion less weight. (*See* DE 13 at 1753-54.) Likewise, the ALJ made no attempt to consider whether Dr. Duva's opinion was "supported by reliable medical techniques," and "not contradicted by other reasonable evidence in the administrative record." *Colgan*, 22 F.4th at 360 (citation omitted). In light of the above, the ALJ failed to give "good reasons" for his weight assignment, and "a searching review of the record" does not confirm "that the substance of the treating physician rule was not traversed[.]" *Id.*

      **ii.   The Neurologist (Dr. Zariff)**

      The ALJ similarly erred in affording less weight to the opinion of Dr. Zariff. Dr. Zariff began treating Plaintiff beginning in 2005 and saw Plaintiff every 3-4 months through 2018. (DE 13 at 894, 1726.) In a medical statement dated December 13, 2016, Dr. Zariff diagnosed Plaintiff with lumbar radiculopathy, neuralgia, and fibromyalgia. (DE 13 at 894.) Dr. Zariff found Plaintiff to have a limited range of motion, weakness, and experience severe pain "all over" due to the fibromyalgia. (DE 13 at 894-95.) During an 8-hour workday, Dr. Zariff opined,

13

Plaintiff could sit and stand/walk less than 2 hours, lift up to 5 pounds occasionally,[11] and would likely be absent from work more than 4 times per month. (DE 13 at 894-96.) Dr. Zariff's opinions of Plaintiff's condition were nearly identical 2 years later. (*see* DE 13 at 1726-28.) Dr. Zariff repeatedly opined that Plaintiff "cannot [sic] work." (*Id.*) In a medical statement dated July 3, 2018,[12] Dr. Zariff's opinions stayed consistent. (*Id.*) Dr. Zariff again found that Plaintiff could sit and stand/walk less than 2 hours, lift up to 5 pounds occasionally, and would likely be absent from work more than 4 times per month. (*Id.*) Again, Dr. Zariff found that Plaintiff was incapable of work. (*Id.*) The ALJ afforded Dr. Zariff's opinions "less weight" because he found them to be inconsistent with post-operative treatment records and diagnostic imagine of Plaintiff's lumbar spine. (DE 13 at 1753.) Again, the ALJ failed to explicitly consider the *Burgess* factors or provide "good reasons" for assigning Dr. Zariff's opinion less weight. The ALJ offers no explanation as to why Plaintiff was determined disabled only as of July 1, 2018, when Dr. Zariff's medical diagnosis, findings, and opinions remained consistent from as early as December 13, 2016. In light of the above, the ALJ failed to give "good reasons" for his weight assignment, and "a searching review of the record" does not confirm "that the substance of the treating physician rule was not traversed[.]" *Colgan*, 22 F.4th at 360 (citation omitted).

On remand, the ALJ should consider whether the opinions of Plaintiff's treating physicians are "supported by reliable medical techniques" and "not contradicted by other reasonable evidence in the administrative record." *Colgan*, 22 F.4th at 360. If the ALJ declines to give controlling weight to their opinions, the ALJ should explicitly weigh each of the *Burgess* factors discussed above. *See Estrella*, 925 F.3d at 95–96. Finally, the ALJ should consider

---

[11] In this context, "occasionally" means less than 1/3 of the workday. (DE 13 at 895.)
[12] Recall that the ALJ found Plaintiff disabled beginning July 1, 2018. (DE 13 at 1760.)

whether to direct the physicians to supplement their findings with additional information. *See Rosa*, 168 F.3d at 79–80.

Because the Court remands the case based on the issues discussed above, it is not necessary to rule on Plaintiff's remaining arguments.

**B. Remand to New ALJ**

Plaintiff requests (albeit in a footnote) that because the current ALJ has held five hearings, issued two deficient decisions, and the case has been pending for six years, that the case be remanded to a new ALJ. (DE 14 at n.5; DE 16 at 5.) Defendant does not specifically offer opposition on the point, but generally argues that no remand is necessary. (*See* DE 15-1.)

"The selection of a new ALJ on remand has been considered to be within the discretion of the Commissioner of the Social Security Administration." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004). However, Courts have, on occasion, ordered the Commissioner to assign a different ALJ to the case on remand. *Id.* In one such instance, the Court remanded to a new ALJ because "rather than have the same ALJ review the claims a third time," the Court determined "a fresh look by another ALJ would be beneficial." *Ortiz v. Chater*, No. 95 CV 3126 (ERK), 1997 WL 50217, at *3 n.1 (E.D.N.Y. Jan. 30, 1997); *see McClaney v. Astrue*, No. 10-CV-5421 JG JO, 2012 WL 3777413, at *20 (E.D.N.Y. Aug. 10, 2012); *Collado v. Astrue*, No. 05-CV-3337 KMK/LMS, 2009 WL 2778664, at *16 (S.D.N.Y. Aug. 31, 2009).

Although the record does not support a finding of any overt bias or prejudice by the ALJ assigned to this case, the undersigned respectfully directs the assignment of Plaintiff's application for benefits to a different ALJ on remand for consideration of Plaintiff's voluminous health documentation consistent with the findings set forth above.

15

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for judgment on the pleadings, DENIES the Commissioner's cross-motion, and REMANDS this case for further proceedings consistent with this Order before a newly assigned ALJ. The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

Dated: Central Islip, New York
July 25, 2023

S O  O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge